1999-NMCA-144

993 P.2d 104

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**George CORDOVA, Defendant–Appellant.**

**No. 18895.**

Court of Appeals of New Mexico.

Sept. 14, 1999.

Certiorari Granted, No. 25,988,
Nov. 19, 1999.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Jennifer L. Stone, Albuquerque, for Appellant.

## OPINION

ARMIJO, Judge.

{1}   George Cordova (Defendant) appeals his convictions for Criminal Sexual Contact of a Minor (CSCM), contrary to NMSA 1978, § 30–9–13(A)(1) (1991), and false imprisonment, contrary to NMSA 1978, § 30–4–3 (1963). He claims violation of his rights to due process and fundamental fairness. Alternatively, he claims that his sentence on both charges violated his protection against double jeopardy. He further claims error in the district court's admission of polygraph evidence and in the trial judge's refusal to recuse himself. For the reasons discussed below, we affirm Defendant's convictions and sentence.

### FACTUAL BACKGROUND

{2}   In August 1995, a grand jury indicted Defendant on charges of CSCM and false imprisonment. The State's factual allegations supporting the indictment are that on July 28, 1995, an eleven-year-old girl (Child) entered Defendant's home to borrow a pair of scissors. While in his home, she waited for Defendant to end a telephone call. When he ended his call, Child walked toward Defendant to thank him. At this point, Defendant pulled Child to him and restrained her to his lap. While restraining her, Defendant reached down and grabbed Child's vagina through her clothes, as if "he was trying to grab inside." Child struggled to free herself, dropping the scissors in the process. She eventually broke free sufficiently to grab for the scissors; however, Defendant pulled her back, again restraining her to his lap. He then kissed Child, inserting his tongue into her mouth.

### PROCEDURAL BACKGROUND

{3}   The district court, presided over by Judge Robert M. Doughty, II, convened a jury trial to hear these charges on May 13, 1996. Prior to trial, Defendant filed a motion in limine, seeking to exclude from evidence any reference to a polygraph test administered upon Child that indicated she was speaking truthfully in making her allegations against Defendant. As his initial grounds of objection, Defendant argued that the polygraph evidence ought to be excluded for the State's failure to comply with the discovery requirements of Rule 11–707 NMRA 1999. The district court denied the motion. Defendant supplemented his motion on the morning of trial, summarily asserting that the polygraph evidence was inadmissible per *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *State v. Alberico,* 116 N.M. 156, 861 P.2d 192 (1993):

> Supplemental to our objection to the court's ruling on the admissibility of the polygraph testimony and in light of the fact, your honor, that in the event that in some appellate court the rule, or Supreme Court rule, or rule of evidence relating to admissibility should be disregarded and the court should go to the *Dow Chemical [Pharmaceuticals]* test, which is set out, I think in *Alberico,* ... we would object under *Dow Chemical [Pharmaceuticals]* and under *Alberico* to the admissibility of the, of the polygraph evidence because it does not pass what's commonly called and become the *Dow* test.

The trial judge denied this supplemental motion.

{4} The trial ended with a hung jury. The record is unclear as to how the jury voted, and the parties contest whether the majority favored acquittal or conviction. Nonetheless, on May 21, 1996, the district court entered a written order of mistrial, expressly reserving the State's right to retry the case. The parties do not contest the validity of, nor the findings supporting, the mistrial order.

{5} The district court convened a second trial on November 12, 1996; however, due to a scheduling conflict, Judge Doughty recused himself, appointing Judge Frank K. Wilson to try the matter in his stead. In this proceeding, Defendant filed no pretrial motions; instead, on the first day of trial, he summarily asked the court to reconsider the pretrial motion made prior to the first trial. Without any substantive presentation or argument, the district court reaffirmed the prior ruling; that is, it denied the motion.

{6} The evidence the parties presented at the second trial did not substantially differ from that which they presented at the first. Defendant notes changes in the State's direct and cross-examinations, the State's addition of Child's step-father as a witness, and modifications in some witnesses' testimony. Nonetheless, as a whole, the parties did not substantially alter their evidence or arguments for the second trial.

{7} The second trial also ended with a deadlocked jury. The record indicates, however, that this jury voted eleven to one to convict on the charge of CSCM and eight to four to convict on the charge of false imprisonment. On November 21, 1996, the district court entered a second written order of mistrial. The parties do not challenge the validity of, nor the findings supporting, the trial court's second declaration of a mistrial.

{8} Judge Doughty convened a third and final jury trial on August 7, 1997. On July 25, 1997, eleven days before trial, Defendant filed a motion, whereby he sought the following relief: appointment of a public defender to replace his private counsel, due to Defendant's indigency; dismissal of all charges, claiming violations of due process and the prohibition against double jeopardy; recusal of the district attorney's office, due to an alleged appearance of impropriety; and funds for transcripts and transportation of witnesses.

{9} The district court convened a hearing on the motion the day before trial, August 6, 1997, and denied Defendant's motion in all regards. However, in denying the motion, the judge noted that if the third trial ended with a deadlocked jury, the State would not be allowed to try Defendant yet again.

{10} The third jury convicted Defendant on both counts. The district court subsequently sentenced Defendant to eight-and-one-half years in prison—three years for the CSCM conviction, one-and-one-half years for the false imprisonment conviction, and four years' enhancement for Defendant's habitual offender status. Defendant now appeals.

*DISCUSSION*

{11} On appeal, Defendant raises four arguments. He claims that: (1) allowance of a third trial violated fundamental fairness and his right to due process, (2) sentencing on both charges violated the constitutional prohibition against double jeopardy, (3) admission of evidence of Child's polygraph test was error, and (4) Judge Doughty's refusal to recuse himself from the third trial was error. We discuss each of Defendant's claims in turn.

1. *Due Process and Fundamental Fairness*

■ {12} Defendant argues that the district court deprived him of fundamental fairness and due process by allowing the State to wage a "trial by attrition." *United States v. Castellanos*, 478 F.2d 749, 753 n. 4 (2d Cir. 1973) (quotation marks omitted). By allowing repeated prosecution, he asserts, the court permitted the State to win its case by wearing down Defendant as it practiced its own case. In so arguing, he raises a novel question: when does retrial, subsequent to a validly entered mistrial, go too far? The question implicates two basic rights: a defendant's right to a fair trial and the State's right to seek a verdict on validly prosecuted charges.

■ {13} Reviewing Defendant's claim of constitutional error de novo, we find no per se violation of due process in the district court's third trial of Defendant. A retrial, subsequent to a validly entered mistrial, does not alone violate a criminal defendant's constitutional rights. *See, e.g., United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir.1978); *Ex parte Anderson*, 457 So.2d 446, 451 (Ala. 1984); *People v. Hobbs*, 301 Ill.App.3d 481, 234 Ill.Dec. 843, 703 N.E.2d 943, 950 (1998); *Cook v. State*, 940 S.W.2d 623, 627–28 (Tex. Crim.App.1996) (en banc). Defendant adduced no evidence that the State used the third trial to intimidate or harass him. Nor did Defendant present evidence of any other prosecutorial abuse of power. *See State v. Duncan*, 117 N.M. 407, 410–12, 872 P.2d 380, 383–84 (Ct.App.1994).

■ {14} Turning to the specific facts of this case, we note that Defendant moved for a continuance on April 21, 1997, citing the "overwhelming" "financial burden of a third trial" and the possibility that he would seek appointment of a public defender. Among Defendant's specific complaints regarding cost, he pointed to his inability to pay for either transcripts or the transportation of out-of-state witnesses who had testified at the previous trials. As to the transcripts, we note that Defendant had access to tape recordings of the previous trials and has failed to demonstrate that he was prejudiced by lack of access to a written transcript. *See*

*Commonwealth v. Parker*, 718 A.2d 1266, 1270 (Pa.Super.Ct.1998); *cf. State v. Bartlett*, 109 N.M. 679, 682, 789 P.2d 627, 630 (Ct.App. 1990) (concluding defendant's due process rights would not be violated by allowing retrial despite loss of some evidence).

■ {15} We also note—and are more troubled by—Defendant's claims regarding the out-of-state witnesses and the appointment of a public defender. However, Defendant made no motion on these matters until July 25, 1997—three months after his original request for a continuance and less than two weeks before trial. In denying the motion, the district court admonished Defendant for not formally raising these remediable matters earlier. *Cf. Bartlett*, 109 N.M. at 682, 789 P.2d at 630 (noting that where less drastic remedies are available, "a claim of violation of due process is less persuasive"). We do not determine this ruling to have been in error.

■ {16} There were unusual terms in the legal representation agreement between Defendant and his counsel: counsel was bound to represent Defendant for a single fee, exclusive of expenses, through trial and any subsequent retrial. As such, the primary financial burden of retrial was upon counsel, not Defendant. Defendant does not argue that this contract was a violation of due process or fundamental fairness; nor does he argue that he was afforded ineffective counsel as a result of this contract. However, assuming such arguments had been raised, our review of the record indicates that the contract did not amount to a violation of Defendant's rights at trial.

{17} We therefore hold that the district court did not violate Defendant's due process rights by allowing the State to proceed to a third trial.

■ {18} In the present case, while the trial court did not elucidate as to its reasons for denying Defendant's motion, we conclude that it did not abuse its discretion by denying Defendant's motion. In reaching this conclusion, we note that Defendant failed to demonstrate that he was prejudiced by having to proceed to a third trial. While, for example,

certain defense witnesses had become unavailable and the court failed to appoint a public defender, blame for any arguable prejudice resulting from these events can be more fairly attributed to Defendant's failure to timely seek a remedy from the trial court rather than to the occurrence of a third trial. Moreover, while we cannot determine with any certainty how the jury voted at the first trial, we do note that the jury voted eleven to one to convict on the charge of CSCM and eight to one to convict on the false imprisonment charge at the second trial; that is, it appeared that the State had a strong case against Defendant. Upon these facts, we cannot view the trial court's denial of Defendant's motion to be an abuse of discretion. In the case before us, we recognize these factors as sufficient to support the trial court's denial of Defendant's motion. *See Abbati*, 493 A.2d at 521–22 (setting forth criteria for trial court analysis in this context).

{19} Accordingly, we find that the trial court did not abuse its discretion in refusing to dismiss Defendant's indictment prior to the third trial.

2. *Double Jeopardy*

■ {20} Defendant next claims that the district court violated his right to be free from double jeopardy by sentencing him twice for the same, unitary act. *See Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). The constitutional prohibition against double jeopardy "protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora*, 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789. Our analysis of this issue turns on two questions: (1) was Defendant's conduct unitary—that is, unseparated in time, intent, or action; and (2) if so, did the Legislature intend to impose multiple punishments for such unitary conduct. *See Swafford*, 112 N.M. at 7, 810 P.2d at 1227. We decide this issue without reaching the second question of analysis.

■ {21} Under the well-tested *Swafford* analysis, if the factual allegations violate separate statutory provisions, but are "separated by sufficient indicia of distinctness,"

the defendant's conduct is not unitary. *Id.* at 13, 810 P.2d at 1233. "The court may consider as 'indicia of distinctness' the separation of time or physical distance between the illegal acts, 'the quality and nature' of the individual acts, and the objectives and results of each act." *Mora*, 1997–NMSC–060, ¶ 68, 124 N.M. 346, 950 P.2d 789 (quoting *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34). Applying these principles to the instant case, we conclude that the allegations supporting Defendant's convictions for CSCM and false imprisonment did not constitute a unitary act.

{22} The guilty verdicts below were based upon the State's presentation indicating the following: Defendant restrained Child to his lap; while so restrained, Defendant touched Child's vagina through her clothing; Child resisted Defendant, struggling to break free and succeeding sufficiently to grab for the dropped scissors; Defendant pulled Child back; once again restraining her to his lap, Defendant kissed her, inserting his tongue into her mouth.

{23} Upon these facts, it appears Defendant falsely imprisoned Child twice: the first time to commit CSCM upon her and the second to kiss her. Such distinct intent behind the separate acts of restraint is sufficient to conclude that the act was not unitary. *See Mora*, 1997–NMSC–060, ¶ 68, 124 N.M. 346, 950 P.2d 789. Moreover, we note that Defendant's commission of CSCM was complete prior to his second act of restraint against Child. *See State v. Kersey*, 120 N.M. 517, 523, 903 P.2d 828, 834 (1995). Upon this record, "the jury reasonably could have inferred independent factual bases for the charged offenses"; that is, there are clear and distinct factual bases for the two charges, thus defeating Defendant's claim that his conduct was unitary. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. We therefore conclude that the district court's sentencing of Defendant separately for CSCM and false imprisonment did not violate his protection against double jeopardy.

3. *Admission of the Polygraph Evidence*

{24} Defendant claims error in the admission of the polygraph evidence that indi-

cated Child was telling the truth about her allegations against Defendant. Specifically, Defendant argues on appeal that the district court abused its discretion by inquiring as to the admissibility of this evidence only per Rule 11–707 and ignoring Rule 11–702 NMRA 1999. We decline to review this unpreserved claim of error.

{25} Prior to the first trial, Defendant moved to exclude, among other things, any reference to or evidence regarding Child's polygraph test. Defendant argued, citing *State v. Sanders,* 117 N.M. 452, 872 P.2d 870 (1994), that the State had violated the discovery requirements of Rule 11–707 by failing to provide adequate notice of its intent to use the polygraph evidence. Concluding that ample time remained prior to trial for the State to comply with the rule's discovery requirements, the judge denied the motion.

{26} As already noted, Defendant again moved—only on the morning of trial—to exclude the polygraph evidence, claiming it was inadmissible per *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, and *Alberico,* 116 N.M. 156, 861 P.2d 192. As noted above, the judge denied this supplemental motion.

{27} On appeal from the third trial, Defendant claims that he has preserved this issue for appeal to this Court. He correctly notes that prior to the third trial, he sought an omnibus renewal of his pretrial motions made in the first proceeding.

> **Defense Counsel:** I believe that covers everything, judge. Except, I would, just as a housekeeping matter, I'd want, the court, the motions that we filed originally and the court has already ruled on those, I think just as a matter of record the court rulings would be the same, that we filed on the first trial. In the second trial of the case, Judge Wilson followed this court's rulings on those original motions and I don't think there would be any, any change and I suppose I should make some sort of a record on that. And that's all we have, your honor.

However, he ignores that the judge declined to rule upon such an unparticularized motion to renew. As Judge Doughty stated: "I don't remember what [the motions] were. I don't remember the evidence in this case. I

try not to reverse myself." Defense counsel, therefore, elucidated:

> **Defense counsel:** Okay. It seems that, judge, I had, I had moved to suppress statements of the Defendant. The Court entered a written order saying that those statements were voluntary and noncustodial and overruling that. The discovery motions, I think, are not relevant here because I concede the State's complied with those. The only other thing we need a new, a continued ruling on is that we had, I had moved in paragraph two of my original pretrial motion to dismiss the indictment or alternatively either count thereof upon the grounds that one is duplicitous in that it alleges the same offense in more than one count, count two is a restatement of one of the elements of count one and defendant cannot therefore be convicted of both counts in violation of double jeopardy provisions of the [inaudible] of the state. My recollection is that the Court initially reserved ruling until you had heard the evidence and then later, I believe after the State had closed, or after the Defendant had closed, the Court overruled that, that motion, if memory serves me.

Thereupon, the judge denied Defendant's renewed motions.

{28} As Defendant failed to seek or obtain a discrete or knowing ruling from the trial court on the matter at the third trial, we hold that he has failed to preserve any appellate challenge regarding Rule 11–702 and *Alberico. See State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). Defense counsel's only renewed objections pertained to his double jeopardy argument and his motion to suppress some of Defendant's statements. Notably, his only inferential mention of the polygraph evidence is his waiver of any objection as to the State's compliance with its discovery obligations. In short, Defendant cannot, as he attempts here, rely upon an objection made at the first trial to preserve an issue for appeal from the third trial. *See United States v. Palmer,* 122 F.3d 215, 221 (5th Cir.1997) ("[O]bjections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs.").

{29} Moreover, we express our reservations regarding the adequacy of Defendant's perfunctory objection made on the morning of the first trial. *Cf. State v. Torres,* 1999–NMSC–010, ¶ 22, 127 N.M. 20, 976 P.2d 20 (holding *Alberico* challenge to horizontal gaze nystagmus test preserved where defendant "specifically objected" to the reliability of the test "at the time the State was eliciting foundational matters from the officer"). In support of his *Alberico* objection at the first trial, Defendant brought forth no testimony or other evidence as to the lack of scientific reliability of or methodology utilized in a polygraph examination.

{30} Finally, despite the arguable merit of his claim, we note that even if Defendant had adequately preserved this question, we cannot provide the relief he seeks. It is well-established that this Court is without authority to reverse or revise court rules that have been previously interpreted by our Supreme Court. *See State v. Wilson,* 116 N.M. 793, 795–95, 867 P.2d 1175, 1177–78 (1994). Our Supreme Court has repeatedly applied Rule 11–707 to the conspicuous exclusion of Rule 11–702. *Compare Tafoya v. Baca,* 103 N.M. 56, 59, 702 P.2d 1001, 1004 (1985) ("This Court adopted Rule 707 in an attempt to standardize the admission of [polygraph] test results and to *supersede* the various requirements and holdings of prior cases that were inconsistent with the rule.") *with State v. Gallegos,* 92 N.M. 370, 376, 588 P.2d 1045, 1051 (Ct.App.1978) (affirming admission of polygraph evidence per Rule 11–702); *see also State v. Baca,* 120 N.M. 383, 387–88, 902 P.2d 65, 69–70 (1995); *Sanders,* 117 N.M. at 459, 872 P.2d at 877; *B & W Constr. Co. v. N.C. Ribble Co.,* 105 N.M. 448, 450–51, 734 P.2d 226, 228–29 (1987); *cf. State v. Aragon,* 116 N.M. 291, 293, 861 P.2d 972, 974 (Ct.App.1993) (post-*Alberico* petition for certiorari denied).

{31} Defendant suggests, however, that the time has come for reconsideration of existing precedent. He may be right. Much has changed since the Rule was initially adopted and, in light of *Alberico,* a contemporary trial court may have additional responsibilities to test the reliability of proposed polygraph evidence beyond that mentioned in the Rule. We urge our Supreme Court to undertake a review of the Rule in light of contemporary standards.

### 4. *Judge Doughty's Refusal to Recuse*

{32} Finally, Defendant argues that Judge Doughty was biased, made threats against him in prior proceedings, and ought to have recused himself from presiding over the third trial. Defendant, however, fails to bring to this Court's attention any evidence that Judge Doughty was inclined against him in any way. The only purported evidentiary support is the hearsay assertion of nonrecord conversations between Defendant and his attorney. Such evidence is insufficient to support Defendant's argument.

{33} As evidence of the propriety of recusal, Defendant notes that the judge recused himself from presiding over the second trial in this case. However, the record indicates that Judge Doughty recused himself from presiding over the second trial because of a scheduling conflict. This bears no relevance to the question of whether he ought to have stepped down from presiding over the third trial. Accordingly, we find no error in Judge Doughty's refusal to recuse himself.

### CONCLUSION

{34} For the reasons discussed above, we affirm Defendant's convictions and sentences.

{35} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.