Collis Dean SIVELS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9908–CR–455.

Supreme Court of Indiana.

Jan. 29, 2001.

Victoria Ursulskis, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Four juries have assembled in the murder prosecution of appellant Collis Sivels. The first was dismissed after the court granted a continuance. Two successive juries were unable to agree on a verdict. Sivels contends that the fourth prosecution, which resulted in his conviction, violated his due process rights under both the Fourteenth Amendment of the U.S. Constitution and Article I, Section 12 of the Indiana Constitution, as well as precepts of fundamental fairness grounded in both constitutions.

In analyzing Sivels' claims, we examine the authority of a trial court to dismiss an information and end prosecution after prior attempts to convict a defendant resulted in hung juries.

### Facts and Procedural History

On the evening of September 21, 1996, Sivels, Jeremy Adams and a third person were at a hotel bar near the Indianapolis International Airport. Michael Shanklin was also at the bar. Shanklin later spoke to Sivels and Adams in the parking lot near the hotel entrance, saying he wanted to get cocaine from someone who lived on the west side of Indianapolis.

Adams drove Shanklin, Sivels, and a fourth person to the home described by Shanklin. Once there, Shanklin "couldn't score" any drugs. (R. at 433.) Under Sivels' direction, Adams then drove the group to the apartment complex where Sherita Robinson lived. Sivels went to Robinson's apartment and the rest of the group fell asleep in the car.

Adams eventually went to Robinson's apartment looking for Sivels. Sivels left the apartment with Adams and suggested that they rob Shanklin. Adams agreed. He shoved Shanklin out of the front passenger seat of the car onto the parking lot pavement. Sivels beat Shanklin and then shot him in the stomach.

While Shanklin lay bleeding on the pavement, Adams reached into Shanklin's pocket and stole his wallet. Then Sivels shot Shanklin in the head. Sivels and Adams returned to the car and drove away. Shanklin remained on the ground and later died from the two gunshot wounds.

The State charged Sivels and Adams as co-defendants with murder, felony murder and robbery. Jury selection began on October 14, 1997. The selected jury was dismissed before it was sworn because Sivels' case was continued due to the fact that Adams' case was continued.

On June 2, 1998, a jury was selected and sworn. The jury found Sivels not guilty of

felony murder or robbery. It was unable to reach a verdict on the murder charge. The court dismissed the jury and set a new trial date. The State moved to try the defendants separately, and the court so ordered.

Sivels was the sole defendant in the next jury trial; it began on March 22, 1999. The jury was unable to reach a verdict on the murder charge. The court denied Sivels' request for bail and reset the matter for another jury trial. Sivels later filed a motion to dismiss based upon his contention that the multiple prosecutions violated his right to due process. After a hearing, the trial court denied the motion.

The next trial began on June 29, 1999. On the same date, Adams pled guilty and subsequently testified for the State against Sivels. The jury found Sivels guilty of murder. He now appeals this final prosecution.

### Issue of First Impression

Sivels argues that retrial after two successive deadlocked jury trials violated his right to due process and fundamental fairness.[1] (Appellant's Br. at 8.) Analysis of this claim requires that we first determine whether a trial court has authority to dismiss an information in order to put an end to successive prosecutions resulting from hung juries. If this authority exists, then we must next consider when due process and precepts of fundamental fairness require such a dismissal. This is an issue of first impression in Indiana.

### Inherent Authority to Dismiss

■ Sivels asserts, as he did in the hearing on the motion to dismiss, that the trial court "had the inherent authority to take up [his] Motion to Dismiss the Information and rule favorably thereon." (Appellant's Br. at 24.) He supports this contention by citing *Hawkins v. State*, 125 Ind. 570, 573, 25 N.E. 818, 819 (1890), in which we said, "When a court is created by the legislature under the constitution, all the powers essential to the existence of the tribunal, and the due exercise of its powers, at once vest in it from the constitution.... This power ... is an inherent one, and exists independently of statute."

In addition to a court's inherent power, Sivels claims refuge in the federal Constitution's Due Process Clause[2] and the Indiana Constitution's Due Course of Law Clause.[3] He maintains that the clauses are interchangeable for purposes of legal analysis. (Appellant's Br. at 24, citing *White v. State*, 497 N.E.2d 893, 908 n. 4 (Ind.1986)(referring to a substantial line of cases treating the Due Process Clause and the Due Course Clause as interchangeable).)

The State responds by indicating that these federal and state provisions are analogous only in a civil law context.[4] (Appel-

---

1. In his brief, Sivels asserts, "Holding Collis Sivels to answer to a fourth jury violated his rights...." (Appellant's Br. at 8.) Actually, Sivels answered to three, not four, juries. The first jury was dismissed before it was sworn and the case was continued. (R. at 13.)

2. Section 1 of the Fourteenth Amendment states, in part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

3. Article 1, section 12 of the Indiana Constitution states, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

4. The State writes,

 In civil proceedings, the procedural right to "remedy by due course of law["] is essentially identical to the federal due process doctrine. In a criminal context, however, state criminal procedural doctrines have developed almost uniformly by reference to the more specific provisions that make up our state Constitution's counterpart to the federal bill of rights.

 (Appellee's Br. at 4 (citation omitted).)

lee's Br. at 4.) The State relies on the declaration in *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 975–76 (Ind.2000): "By its terms, [the Due Course of Law] provision applies only in the civil context. It omits any reference to deprivation of 'life, liberty, or property,' which is the trigger of due process requirements in the criminal context."

The State, therefore, urges that no authority exists for a trial court to "step into the shoes of the prosecutor and dismiss an indictment following a hung jury . . . ." (Appellee's Br. at 5.) It also asserts that such authority has not been "recognized by the highest courts of either the federal judiciary or our appellate judiciary." (*Id.*) Finally, the State suggests that there is no need to create this authority "under the guise of due process" because defendants are adequately protected against excessive prosecutions by the Double Jeopardy Clause. (*Id.*) [5]

At the hearing on the motion to dismiss, the trial court concluded that it "ha[d] inherent jurisdiction to limit prosecutions, because at some point it gets to be unreasonable." (R. at S12.) We agree.

A survey of courts in several jurisdictions provides strong support for the proposition that a trial court has inherent authority to dismiss an information or indictment with prejudice where multiple mistrials caused by hung juries infringed on the defendant's right to fundamental fairness.

In *State v. Abbati*, 99 N.J. 418, 493 A.2d 513, 515–16 (1985), the Supreme Court of New Jersey was confronted with a defendant who faced a third trial after two prior mistrials due to deadlocked juries. The court stated,

> [P]recepts of fundamental fairness, together with the judiciary's need to create appropriate and just remedies, and

its general responsibility to assure the overall efficient administration of the criminal justice system, confirm an inherent power in a trial court to dismiss an indictment with prejudice following general mistrials attributable to repeated jury deadlocks.

*Id.* at 517.

In *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705, 708 (1982), the defendant also experienced two hung jury mistrials. The Supreme Court of Hawaii indicated, "trial courts have the power to dismiss . . . an indictment with prejudice and over objection of the prosecuting attorney." *Id.* at 711. The court clarified that the trial court's authority is limited "[w]ithin the bounds of duly exercised discretion . . . ." *Id.*

The Supreme Court of Tennessee addressed a case involving a defendant whose first three murder trials resulted in hung juries. *State v. Witt*, 572 S.W.2d 913, 914 (Tenn.1978). The court stated,

> [T]rial judges have the inherent authority to terminate a prosecution in the exercise of a sound judicial discretion, where . . . repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries and where it appears that at future trials substantially the same evidence will be presented and that the probability of continued hung juries is great.

*Id.* at 917.

In *People v. Thompson*, 424 Mich. 118, 379 N.W.2d 49 (1985), a defendant was convicted of armed robbery and felony murder. The conviction was reversed and the case retried. A mistrial was declared due to a hung jury and upon retrial the defendant was convicted. On appeal, the Supreme Court of Michigan stated, "[T]here may be cases in which repeated

---

**5.** Sivels concedes that his continued prosecution after mistrials by hung juries did not violate his rights under the Double Jeopardy Clause. (Appellant's Br. at 23.) *See Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Young v. State*, 482 N.E.2d 246, 249 (Ind.1985). Sivels does not assert a violation of his right to speedy trial.

retrials after repeated jury deadlock might be so fundamentally unfair as to violate the due process guaranteed by [the state or federal constitutions]. . . ." *Id.* at 55.[6]

In *State v. Sauve,* 164 Vt. 134, 666 A.2d 1164, 1165 (1995), the State appealed the district court's dismissal of an information that was amended after a mistrial. The Vermont Supreme Court reversed the decision and stated, "In reaching its determination regarding dismissal of a case following one or more hung juries, the trial court must generally defer to the prosecutor's decision to retry the case, but if fundamental fairness compels dismissal, the court is authorized to do so." *Id.* at 1166.

■ While different jurisdictions refer to different sources of the trial court's authority to dismiss after multiple mistrials, the majority of the appellate courts rely on precepts of fundamental fairness and notions of fair play and substantial justice.[7] We agree with the many jurisdictions that hold trial courts have inherent power to dismiss an information with prejudice following mistrials attributable to repeated jury deadlocks, where necessary to uphold guarantees of fundamental fairness and substantial justice.

### Guideline for Dismissal of Information

■ Caselaw from elsewhere suggests that "the trial court must generally defer to the prosecutor's decision to retry the case, but if fundamental fairness compels dismissal, the court is authorized to do so." *State v. Sauve,* 666 A.2d at 1169; *State v. Moriwake,* 647 P.2d at 712. In determining whether fundamental fairness compels dismissal, a trial court must balance "two basic rights: a defendant's right to a fair trial and the State's right to seek a verdict on validly prosecuted charges." *State v.*

*Cordova,* 128 N.M. 390, 993 P.2d 104, 108 (Ct.App.1999).

The Vermont Supreme Court has identified various factors that a trial court should weigh when striking this balance. Justice Denise Johnson's opinion listed the following factors:

(1) the seriousness and circumstances of the charged offense; (2) the extent of harm resulting from the offense; (3) the evidence of guilt and its admissibility at trial; (4) the likelihood of new or additional evidence at trial or retrial; (5) the defendant's history, character, and condition; (6) the length of any pretrial incarceration or any incarceration for related or similar offenses; (7) the purpose and effect of imposing a sentence authorized by the offense; (8) the impact of dismissal on public confidence in the judicial system or on the safety and welfare of the community in the event the defendant is guilty; (9) the existence of any misconduct by law enforcement personnel in the investigation, arrest, or prosecution of the defendant; (10) the existence of any prejudice to defendant as the result of passage of time; (11) the attitude of the complainant or victim with respect to dismissal of the case; and (12) any other relevant fact indicating that judgment of conviction would serve no useful purpose.

*State v. Sauve,* 666 A.2d at 1168 (citations omitted). The New Jersey court identified some other relevant considerations: "(1) the number of prior mistrials and the outcome of the juries' deliberations, as known; and ([2]) the trial court's own evaluation of the relative strength of each party's case. . . ." *State v. Abbati,* 493 A.2d at 521–22.

---

**6.** *But see People v. Sierb,* 456 Mich. 519, 581 N.W.2d 219, 222 (1998)(administration of justice does not confer on court authority "to allocate resources available to law enforcement . . . or to assess the relative priority of discrete charges in a given community.") (citation omitted).

**7.** *E.g. State v. Abbati,* 493 A.2d at 517; *State v. Moriwake,* 647 P.2d at 712 (fundamental fairness relied upon in addition to statutory judicial power); *State v. Witt,* 572 S.W.2d at 917; *People v. Thompson,* 379 N.W.2d at 55; *State v. Sauve,* 666 A.2d at 1169.

 We think these factors, or such of them as appear relevant in a given case, form an appropriate basis for determining whether to dismiss a defendant's information after multiple prosecutions caused by mistrials. There is surely not a specific number of hung juries that would warrant dismissal, and it is not possible to describe every circumstance where dismissal would be proper. The trial court is in the best position to weigh the relevant factors in making such a decision. Accordingly, abuse of discretion is the appropriate standard for appellate review of a trial court's decision to dismiss or retry a prosecution previously mistried due to hung juries.[8]

 The trial court denied Sivels' motion to dismiss by stating,

> I do think the Court has inherent jurisdiction to limit prosecutions, because at some point it gets to be unreasonable. I personally don't think we've reached that in the case of Collis Sivels.... [T]here is a limit. I don't know what that limit is, and I'm not gonna set it. So, I'm going to deny your motion....

(R. at S12–13.) Sivels cites as error the trial court's failure to "undertake any legal analysis to support its ultimate conclusion." (Appellant's Br. at 25.) He describes the court's failure as "a gross abuse of discretion." (*Id.* at 26.)

The State responds, in its alternative argument, that the trial court properly declined to exercise its authority in this case because "the State had additional evidence to present at the second retrial, making a conviction more likely." (Appellee's Br. at 5.)

We cannot conclude that the trial court erred by not following the guidelines we mentioned above, because they did not then exist. Accordingly, we will examine the trial court's decision in light of these guidelines to determine whether the court abused its discretion.

The circumstances of Sivels' charged offense involved the murder of an unarmed man during the commission of a robbery. The victim was beaten and shot in the abdomen and then in the head.

At the time Sivels filed a motion for dismissal of his murder charge, he had encountered two mistrials. Sivels' counsel was advised that the first mistrial resulted after seven jurors voted for acquittal and five voted for conviction. The second mistrial resulted after nine jurors voted for acquittal and three voted for conviction.[9]

Sivels remained incarcerated without bond for two and a half years before his final trial. During that time, as a result of the trial on June 1, 1998, he was acquitted on two of his charged offenses, felony murder and robbery.

At the hearing on the motion to dismiss, the prosecutor indicated his desire to retry the case.[10] At the conclusion of the hearing, the trial court indicated its own evaluation of the relative strength of the State's case and its belief that Sivels committed the crime charged. At the last retrial, the State had newly available eyewitness testimony by Adams that Sivels murdered the victim. The trial resulted in a conviction.

Upon consideration of these relevant factors, the balance between Sivels' right to fundamental fairness and the State's right to seek a verdict on validly prosecuted charges swings in favor of the State. The trial court did not abuse its discretion by allowing the State to retry the case.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

**8.** *See State v. Sauve,* 666 A.2d at 1169.

**9.** The only reference provided for these polls is Sivels' motion to dismiss on May 25, 1999. (R. at 237–38.)

**10.** Sivels has made no claim of prosecutorial misconduct.