2002-NMCA-071

49 P.3d 681

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Rudy GONZALES, Sr., Defendant–Appellee.**

**No. 21,584.**

Court of Appeals of New Mexico.

May 14, 2002.

Certiorari Denied, No. 27,549, June 25, 2002.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

*OPINION*

ROBINSON, Judge.

{1} This is the State's appeal from the trial court's decision to dismiss charges against Defendant after two trials that resulted in hung juries and a showing of prosecutorial misconduct that the court described as rising "into the realm of perjury or attempts to mislead this court." We hold that because Defendant suffered no prejudice as a result of the State's misconduct, the trial court erred in dismissing based on the misconduct. With respect to the dismissal on due process grounds, we reverse and remand for further determination of whether retrial would violate due process under the *Abbati*-based standard we adopt below. *See State v. Abbati*, 99 N.J. 418, 493 A.2d 513, 521–22 (1985).

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} The facts in this case are largely undisputed. Rudy Gonzales, Senior (Defendant) and his son, Rudy Gonzales, Junior (Junior) were indicted for first-degree murder in late 1996 and early 1997. Their cases were severed and they were tried separately. Junior was convicted in April 1997. In April 1998, Defendant received a mistrial when the jury failed to agree; six out of twelve jurors favored conviction. In January 1999, the State retried Defendant with the same result.

{3} Following the second hung jury, Defendant filed two motions to dismiss the charges with prejudice, one in February 1999 on due process and double jeopardy grounds, and the other in July 1999 for prosecutorial misconduct. The latter related to the prosecution's failure to disclose its relationship with a witness named Billie Woolstenhulme.

{4} Woolstenhulme was a witness in the trial against Junior and was well known to local law enforcement as an informant. He implicated Junior, reporting that while they were incarcerated together, Junior confessed to the murder of Lisa Duncan. The State did not call Woolstenhulme in Defendant's first trial. The State attempted to call Woolstenhulme in Defendant's second trial, but failed to give adequate notice of its intentions and Woolstenhulme was excluded.

{5} Just days before the January 21, 2000, hearing on Defendant's motions to dismiss, the State filed notice that it would not call Woolstenhulme as a witness in the third trial. At the hearing on Defendant's motions to

dismiss, the court heard testimony about the State's clandestine relationship with Woolstenhulme. Woolstenhulme was sentenced on various charges on April 2, 1997, days before Junior's trial. The State offered and Woolstenhulme accepted a plea to six felonies in return for a sentence of probation. The plea agreement also required that Woolstenhulme testify against Junior and Defendant.

{6} Bernalillo County Deputy District Attorney Theodore Raff testified that he made the plea offer at the request of former Sandoval County Assistant District Attorney Joanna Aguilar. Defendant introduced a March 12, 1997, letter from Raff to Aguilar memorializing that arrangement. ·As a result, Woolstenhulme avoided incarceration despite six arrests on multiple probation violations in 1997 and 1998. Woolstenhulme was before the court eight or nine times for these violations. The prosecuting attorney's office, through Aguilar, and the Sandoval County Sheriff's Department, made a series of requests that the Bernalillo County District Attorney's office enter a lenient plea agreement with Woolstenhulme. Aguilar ultimately arranged for Woolstenhulme to remain out of jail and not subject to habitual offender sentencing in exchange for his continued cooperation in the prosecution of Defendant and Junior. In her hearing testimony, however, Aguilar denied making any efforts on Woolstenhulme's behalf.

{7} The relationship between the district attorney's office and Woolstenhulme was not revealed to Defendant. At a pretrial interview, Woolstenhulme insisted that the State had not offered him anything in return for his promise to testify against Junior and Defendant. Aguilar, who prosecuted Junior and orchestrated the State's cooperation with Woolstenhulme, was present but did not correct this statement. Woolstenhulme testified to this as well at Junior's trial, and no one from the State corrected the testimony.

{8} The trial court dismissed the charges against Defendant, finding, inter alia, that: Defendant's witnesses, other than Aguilar, were credible; and the State made efforts on Woolstenhulme's behalf in exchange for his testimony against Junior and Defendant and did not disclose this to the defense. Fur-

thermore, there were ongoing State efforts to assist Woolstenhulme after his testimony against Junior and prior to his proposed testimony in the third trial against Defendant.

{9} On the motion to dismiss based on prosecutorial misconduct, the trial court concluded that the State committed extreme prosecutorial misconduct with respect to Woolstenhulme and that this misconduct warranted dismissal of the charges against Defendant. On the motion to dismiss for denial of due process, the court concluded that there was no reasonable expectation of a different result based on the State's lack of showing of any new or different evidence it would present and that the prosecutorial misconduct weighed heavily against the State in the due process analysis. Therefore, the court also granted the motion to dismiss for denial of due process.

## II. STANDARD OF REVIEW

{10} Defendant urges that we review the dismissal of the charges against him under an abuse of discretion standard, whereas the State maintains that the proper standard is de novo, with deference to the court's factual findings as in prosecutorial vindictiveness cases. We review the dismissal of charges de novo, deferring to the trial court's findings of fact where they are supported by substantial evidence. *See State v. Armijo*, 118 N.M. 802, 811, 887 P.2d 1269, 1278 (Ct.App.1994) (reviewing dismissal for prosecutorial misconduct under de novo standard). Moreover, because the misconduct at issue did not happen in the context of trial, but rather required a separate review of events that occurred outside the courtroom, and because the misconduct is egregious in nature and implicates due process considerations, de novo review is appropriate. *See State v. Brule*, 1999–NMSC–026, ¶¶ 3–6, 127 N.M. 368, 981 P.2d 782.

## III. DISCUSSION

{11} The trial court granted its dismissal on the grounds raised in each of Defendant's two motions to dismiss: prosecutorial misconduct and a due process violation based on the argument that retrial in this case would

violate principles of fundamental fairness. We address the propriety of each in turn.

## A. Prosecutorial Misconduct

{12} The State, primarily through Aguilar, made deals with Woolstenhulme in exchange for his testimony, but failed to disclose this information to Junior or Defendant. The State had the obligation to do so, as this was exculpatory evidence which Defendant had a right to know. *See, e.g., United States v. Bagley,* 473 U.S. 667, 678–83, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (eliminating any analytical difference between impeachment evidence and other exculpatory evidence, all of which must be disclosed to the defendant). Not only did the State fail to disclose, it stood silently by as Woolstenhulme informed the court and the defense at Junior's trial that no deals had been made. The trial court found that the prosecution's conduct "journey[ed] into the realm of perjury." Such conduct violates the due process rights of Defendant, as well as the Rules of Professional Responsibility governing attorney conduct. *See State v. Bartlett,* 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct.App.1990) (describing due process concerns and discovery violations as intertwined); Rule 16–804(C), (D), (H) NMRA 2002 (regarding attorney misconduct).

{13} The issue in this appeal, however, is not whether prosecutorial misconduct occurred. The trial court found that it did, and there was a sufficient evidentiary basis for the court's findings and conclusions in that regard. The question that this Court must address is whether the misconduct formed a basis for the dismissal of charges against Defendant. We hold that it did not.

{14} The law in New Mexico recognizes that a court can dismiss criminal charges based on severe prosecutorial misconduct. *See generally State v. Breit,* 1996–NMSC–067, 122 N.M. 655, 930 P.2d 792. The dismissal of criminal charges for prosecutorial misconduct is an extreme sanction that should be reserved for the most severe prosecutorial transgressions. *See Mathis v. State,* 112 N.M. 744, 747, 819 P.2d 1302, 1305 (1991); *Bartlett,* 109 N.M. at 680, 789 P.2d at 628.

{15} While the conduct here was egregious, its impact on Defendant's trials was not. Woolstenhulme did not testify in either of the trials that resulted in hung juries. With respect to Defendant's trial, we are unable to discern any prejudice that resulted from the prosecutorial misconduct. There is no precedent in New Mexico for such a dismissal absent prejudice to the defendant. Defendant urges us to uphold the trial court, but fails to offer any legal support for the proposition that prejudice is not an essential part of the analysis. Indeed, all of the cases Defendant cites for such sanctions involve situations in which the evidence in dispute was held to be prejudicial.

{16} For example, in *Bartlett,* this Court expressly held that dismissal is not an available remedy for a discovery violation absent prejudice to the defendant. 109 N.M. at 680, 789 P.2d at 628. In *Mathis,* the prosecution failed to disclose information about the key witness/informant's relationship with police, information similar to that at issue here. The witness in *Mathis,* however, was central to the case against the defendants, as the witness had arranged and personally transacted the alleged drug deals with the defendants. 112 N.M. at 745, 819 P.2d at 1303. The Court stated that "prejudice must be shown before a defendant is entitled to [dismissal]." *Id.* at 748, 819 P.2d at 1306; *see also State v. Cordova,* 1999–NMCA–144, ¶ 18, 128 N.M. 390, 993 P.2d 104 (granting the court the right to deny a dismissal motion where no prejudice existed). None of these cases support a dismissal for prosecutorial misconduct absent prejudice to the defendant.

{17} In *In re Jade G.,* 2001–NMCA–058, ¶ 30, 130 N.M. 687, 30 P.3d 376, *cert. granted,* 130 N.M. 713, 30 P.3d 1147, this Court held that the trial court was without authority to dismiss a Children's Code petition as a sanction for police misconduct because it was prelitigation misconduct subject to more tailored sanctions, such as suppression of evidence. Defendant urges us to decide that, under *Jade G.,* because the conduct here was during litigation, the trial court had the inherent authority to dismiss the charges. However,

the mere fact that the misconduct occurred in a courtroom setting does not justify the trial court to dismiss for prosecutorial misconduct. Woolstenhulme never testified against Defendant. We do not believe that these circumstances, in which the trial court dismissed murder charges based on prosecutorial misconduct that did not prejudice Defendant, justify the severe sanction of dismissal. Accordingly, we reverse the trial court's dismissal on this basis.

### B. Multiple Retrials

{18} We note at the outset that a dismissal after a second mistrial based on a hung jury may infringe on prosecutorial discretion, and we do not encourage trial courts to decide whether the State may retry a defendant after mistrial unless retrial will present a clear violation of principles of fundamental fairness and be contrary to the interests of justice. "[I]t is the duty of the district attorney, not the court, to engage in prosecutorial discretion with respect to charging individuals for the commission of crimes." *State v. Bonilla*, 1999–NMCA–096, ¶ 12, 127 N.M. 566, 985 P.2d 168. We recognize the broad discretion of the prosecutor. *See Brule*, 1999–NMSC–026, ¶ 14, 127 N.M. 368, 981 P.2d 782; *State v. Estrada*, 2001–NMCA–034, ¶ 10, 130 N.M. 358, 24 P.3d 793, *cert. denied*, 130 N.M. 459, 26 P.3d 103.

{19} From the trial court's findings and conclusions regarding dismissal for denial of due process, it appears that the prosecutorial misconduct may again have been the court's primary basis for the dismissal. The court did find, however, that the State made no showing of new evidence it would present in a third trial of Defendant. We must determine whether there were facts, other than the existence of prosecutorial misconduct that we addressed above, sufficient to warrant dismissal on due process grounds. Although the trial court did not refer to it in its conclusions, we have noted the test set out in *Abbati*, 493 A.2d at 521–22, in determining whether a subsequent retrial violates principles of fundamental fairness. *See Cordova*, 1999–NMCA–144, ¶ 18, 128 N.M. 390, 993 P.2d 104; *State v. House*, 1998–NMCA–018, ¶ 55, 124 N.M. 564, 953 P.2d 737, *rev'd on*

*other grounds*, 1999–NMSC–014, 127 N.M. 151, 978 P.2d 967. We now formally adopt a variation on the *Abbati* test to guide a trial court's discretion in determining whether dismissal of charges is appropriate.

{20} A majority of state courts grant discretion to a trial court to dismiss charges after successive retrials, citing principles such as "fundamental fairness," "fair play," and "substantial justice." *See United States v. Ingram*, 412 F.Supp. 384, 385 (D.C.1976) (considering dismissal a "matter of fair play"); *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705, 712 (1982) (deriving authority from principles of fundamental fairness); *Sivels v. State*, 741 N.E.2d 1197, 1201 (Ind.2001) (citing fundamental fairness and substantial justice); *Abbati*, 493 A.2d at 517 (relying on fundamental fairness); *State v. Witt*, 572 S.W.2d 913, 917 (Tenn.1978) (holding trial court has inherent authority to terminate prosecution after mistrials when probability of another hung jury is great); *State v. Sauve*, 164 Vt. 134, 666 A.2d 1164, 1169 (1995) (relying on fundamental fairness); *People v. Kirby*, 92 A.D.2d 848, 460 N.Y.S.2d 572, 573–74 (1983) (acknowledging court's inherent authority to terminate prosecution following mistrials based on deadlocked juries); *but see United States v. Brown*, 602 F.2d 1073, 1076 (2d Cir.1979) (holding courts lacked power to dismiss indictment following mistrial based upon hung jury in the interests of justice); *People v. Sierb*, 456 Mich. 519, 581 N.W.2d 219, 225 (1998) (requiring a constitutional violation in order to dismiss).

{21} In addition, a number of jurisdictions have codified by rule or statute a trial court's authority to dismiss criminal prosecutions. *See Sauve*, 666 A.2d at 1167 n. 1. Because New Mexico, like New Jersey, has no such provision, the source of this authority is the provision for judicial authority in our state constitution. N.M. Const art. VI, § 1; *see Abbati*, 493 A.2d at 517–18. The judiciary retains certain inherent authority to oversee and manage its caseload. "[E]ven though specific judicial authority is not delineated by statute, or stated in a rule of court, a court may exercise authority that is essential to the court's fulfilling its judicial functions."

*In re Jade G.*, 2001–NMCA–058, ¶ 27, 130 N.M. 687, 30 P.3d 376; *see also State v. Ahasteen*, 1998–NMCA–158, ¶ 28, 126 N.M. 238, 968 P.2d 328 (acknowledging court's inherent authority to control its docket and to take appropriate action to manage and expedite the flow of cases). We hold that it is within the inherent authority of our judiciary to have limited discretion to dismiss criminal prosecutions after successive retrials.

{22} Such limited discretion does not violate the separation of powers doctrine. The separation of powers is not absolute. *State ex rel. Taylor v. Johnson*, 1998–NMSC–015, ¶ 23, 125 N.M. 343, 961 P.2d 768; N.M. Const. art. III, § 1. Separation of powers doctrine prevents one branch of government from unduly encroaching on or interfering with the authority of another branch of government. *State ex rel. Taylor*, 1998–NMSC–015, ¶ 23, 125 N.M. 343, 961 P.2d 768. As long as the court's discretion in dismissing successive prosecutions is limited and exercised with great caution, there is no separation of powers violation.

{23} In order to assure that such dismissals are granted only "in rare ·and unusual cases when compelling circumstances require such a result to assure fundamental fairness in the administration of justice," *Sauve*, 666 A.2d at 1167, we adopt the factors enumerated in *Abbati* and *Sauve*. These factors are to be weighed by the trial court in deciding a motion to dismiss after successive trials result in deadlocked juries.

{24} In determining whether to dismiss a prosecution after multiple mistrials, the trial court must consider the factors set out in *Abbati:*

(1) the number of prior mistrials and the outcome of the juries' deliberations, so far as is known; (2) the character of prior trials in terms of length, complexity, and similarity of evidence presented; (3) the likelihood of any substantial difference in a subsequent trial, if allowed; (4) the trial court's own evaluation of the relative strength of each party's case; and (5) the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney. The court must also give due weight to the prosecutor's decision to reprosecute, assessing the reasons for that decision, such as [6] the gravity of the criminal charges and [7] the public's concern in the effective and definitive conclusion of criminal prosecutions. Conversely, the court should accord careful consideration to [8] the status of the individual defendant and [9] the impact of a retrial upon the defendant in terms of untoward hardship and unfairness.

493 A.2d at 521–22. We also hold that the trial court may consider any other relevant fact indicating that retrial would not serve a useful purpose. *See Sauve*, 666 A.2d at 1168. Of particular importance, the trial court needs to address the second and fourth factors to assess the strength of the case and the likelihood of a trial of a different character or a different result.

{25} We adopt these non-exhaustive factors to guide and limit the discretion of the trial courts so that they may dismiss criminal prosecutions only in the most extreme of cases. The fact that the trial court made a specific finding on only the first, third, and fifth of the numerous *Abbati* factors listed above gives us some concern.

## IV. CONCLUSION

{26} We reverse the dismissal for prosecutorial misconduct because we fail to see how the misconduct prejudiced Defendant when the witness did not testify against Defendant in either trial. Because it is unclear from the record whether and to what extent the trial court considered the various *Abbati* factors, however, we are unable to determine whether the dismissal was an appropriate exercise of the trial court's authority to act to insure fundamental fairness. We reverse and remand the dismissal on due process grounds for a full determination of whether the indictment should be dismissed on due process and fundamental fairness grounds, in accordance with this decision and the factors set forth above.

{27} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, and JONATHAN B. SUTIN, Judges.