This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                      **NO.    28,420**

**BILL DENNIS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil C. Candelaria, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Gorence & Oliveros, P.C.
Robert J. Gorence
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

This appeal concerns whether a prosecutor's conduct should bar retrial of a criminal defendant pursuant to *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792. The district court held the prosecutor's conduct did not amount to *Breit*'s level of "willful disregard," and therefore did not bar retrial. Defendant raises one issue on appeal: Whether the district court erred in ruling that double jeopardy does not preclude Defendant from being tried again. We affirm the district court's decision.

**I.    FACTS AND PROCEEDINGS**

On February 25, 2005, Defendant Bill Dennis was charged with trafficking cocaine in violation of NMSA 1978, Section 30-31-20(A)(3) (2006). Defendant has been tried twice on the charge in this case. The first trial was held on December 1 and 2, 2005. During Defendant's first trial, Officer Martinez, one of the two arresting officers, commented on Defendant's post-*Miranda* silence. While being cross-examined by counsel for the Defendant, the following exchange occurred:

> [Defense]:  [T]hey have taught you in the Academy that of all the substances you can touch, short of glass, a baggie is about the most receptive thing to lift a fingerprint?
>
> [Martinez]:  Well, there were only two people in the vehicle, and [Defendant] was identified as the owner of the vehicle. He

> at no time–of course, he did not want to speak, but at no time did he state that [the cocaine] was not his. He just got quiet. So I mean, if he would have said at that point, "That is not my stuff," then at that point, we could have further–

Defendant did not object to the officer's testimony at the time.

Defendant was convicted, but the district court granted a new trial on the grounds that the State failed to produce a key witness to the defense and later improperly announced the same witness would be used for rebuttal. This resulted in Defendant not testifying and his failure to introduce evidence that had been relied upon in his opening statement.

Prior to the commencement of the second trial, Defendant moved in limine to prohibit the State from eliciting testimony that commented on Defendant's post-*Miranda* silence. In response, the prosecutor explained to the court there would be testimony from both arresting officers that Defendant did in fact make post-*Miranda* statements. During the hearing on the motion, the court asked the prosecutor: "[A]re we getting into anything where he was advised of his rights and didn't say anything?" The prosecutor responded:

> [Prosecutor]: No, Judge. I believe the State's evidence will be and the officers will testify that they arrested the Defendant almost immediately upon removing him from his vehicle and finding crack cocaine fall from his lap. He was then placed under arrest. He was

3

then Mirandized. Subsequent to being Mirandized, he made a few, though not many statements, some of them spontaneous and some in response to questions that they posed.

[Court]: All right. It doesn't sound at least from the State's offer of proof that the way it's been presented to me that he was Mirandized and say anything that the officers were going to testify that he didn't say to them. I'd ask if that's the case, let's not go there. Obviously, if he is advised of his rights, waived his rights, made statements, then I'll allow the State to proceed.

Following the motion in limine, jury selection took place in the afternoon and was completed more quickly than the State had anticipated. When the State was asked to call its first witness, the State was unprepared as the State had informed its witnesses to be present in the court the following morning. However, the State was able to reach Officer Martinez, who came directly to the court and began her testimony immediately. The State did not speak to Officer Martinez before her testimony concerning the motion in limine and the possibility of post-*Miranda* comments on the Defendant's silence. During direct examination of Officer Martinez, the following exchange took place:

[Prosecutor]: Could you explain to us what happened after you approached [Defendant] the second time?

4

[Martinez]: Like I said, when I approached him the second time, he was asking to go. He just wanted to be let go. He wanted to go home. I didn't want any problems. At that point, I had him exit the vehicle. As he exited the vehicle, as he stood up, I saw what appeared to be the same kind of rock cocaine that was–that we retrieved from [the passenger] had fallen from his lap to the ground. Before he shut the door, I noticed on the driver's seat was also another one of the rocks[,] which appeared to be consistent with the same at that point. We walked him to the rear of the vehicle and placed him under arrest. I did read him his [*Miranda*] [r]ights. He refused to talk at that time.

. . . .

[Prosecutor]: What did you do at that point?

[Martinez]: Once he was read his [*Miranda*] [r]ights and didn't want to talk to me, he was placed in the back of another officer's vehicle so that he could be transported to a substation.

At that point, Defendant objected to Martinez's testimony on the grounds that it commented on Defendant's post-*Miranda* silence. The court responded:

[Court]: Counsel, I–maybe it was my fault, I don't know, but this morning when we had motion hearings I understood that . . . the testimony by way of offer of proof was going to be that he is advised of his rights and he gave some statements, that was my understanding from what everybody was telling me, but now that's not the case.

My understanding of the evidence is that he was advised of his rights and he chose not to make a statement and now testimony has come out that he chose not to make a statement and that's under the law you can't do that.

I don't know what other remedy I have but to declare a mistrial.

Following the mistrial, Defendant moved to dismiss, arguing that double jeopardy barred reprosecution based on the prosecutor's misconduct of eliciting testimony at the second trial regarding Defendant's post-*Miranda* silence. The district court denied the motion. Defendant now appeals that decision.

## II. DISCUSSION

### A. Standard of Review

A claim of prosecutorial misconduct presents a mixed question of law and fact. *State v. McClaugherty*, 2008-NMSC-044, ¶ 39, 144 N.M. 483, 188 P.3d 1244. "The appellate court . . . defer[s] to the district court when it has made findings of fact that are supported by substantial evidence and reviews de novo the district court's application of the law." *Id.* Appellate courts are to examine the prosecutor's conduct in light of the totality of the circumstances of the trial. *Breit*, 1996-NMSC-067, ¶ 40.

### B. The *Breit* Standard

The New Mexico Constitution, like its federal counterpart, protects any person from being "twice put in jeopardy for the same offense." N.M. Const. art. II, § 15.

In *Breit*, the New Mexico Supreme Court articulated a three-part test for determining whether double jeopardy bars reprosecution when a defendant moves for mistrial because of prosecutorial misconduct. Reprosecution is barred when (1) "improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial," (2) "if the official knows that the conduct is improper and prejudicial," and (3) "if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." *Breit*, 1996-NMSC-067, ¶ 32. Under this standard, "[t]the dismissal of criminal charges for prosecutorial misconduct is an extreme sanction that should be reserved for the most severe prosecutorial transgressions." *State v. Gonzales*, 2002-NMCA-071, ¶ 14, 132 N.M. 420, 49 P.3d 681.

Applying the *Breit* standard, we hold that the misconduct in this case did not rise to the level required to bar retrial. Even assuming the first two prongs of the *Breit* test are satisfied, the conduct of the prosecutor fails to rise to the high level of "willful disregard."

In determining whether the prosecutor's conduct amounts to "willful disregard" of a resulting mistrial, retrial, or reversal, the appellate court "will carefully examine the prosecutor's conduct in light of the totality of the circumstances." *Breit*, 1996-

NMSC-067, ¶ 40.  In *Breit*, the New Mexico Supreme Court chose a standard of "willful disregard" rather than the Oregon court's use of the word "indifferent." *Id.* ¶ 34 (internal quotation marks omitted).  "The former term is a predominately legal expression with a well-developed jurisprudential meaning. 'Indifferent' has been used by courts interchangeably with 'heedless,' 'careless,' 'reckless,' 'inattentive,' 'neglectful,' 'negligent,' and other terms that connote a virtual lack of awareness." *Id.* "Willful disregard," on the other hand, "is a more precise term, emphasizing that the prosecutor is actually aware, or is presumed to be aware, of the potential consequences of his or her actions.  "The term connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal." *Id*.

The reprosecution bar in *Breit* was based on "the pervasive, incessant, and outrageous nature of the prosecutor's misconduct during [the defendant's] first trial" and the district court's conclusion that the trial was "out of control." *Id.* ¶¶ 37, 41 (internal quotation marks omitted).

*Breit* involved extreme prosecutorial misconduct with no suggestion of error or negligence. *Id.* ¶ 48.  During opening statements, the prosecutor in *Breit* attempted to inflame the jury with allegations that were irrelevant, matters that could not

permissibly be presented as evidence, and exaggerated claims that no evidence could ever support. *Id.* ¶ 42. When opposing counsel objected, the prosecutor expressed sarcasm and scorn toward counsel. *Id.* During the questioning of witnesses, the prosecutor engaged in improper arguments with the witnesses. *Id.* Even after direct admonition from the court, he attempted to solicit irrelevant comments from the defendant on the testimony of other witnesses. *Id.* The prosecutor in *Breit* directed belligerent remarks at opposing counsel in front of the jury. *Id.* The prosecutor "belittled the defendant's fundamental right to remain silent," and claimed the defendant's right to counsel was "a ploy to avoid punishment." *Id.* ¶ 43. The prosecutor commented that the "opposing counsel had engaged in perjury, lying, and collaborating with the defendant to fabricate a defense." *Id.* Against our rules of evidence, the prosecutor in *Breit* used affidavits from eleven jurors in which he alleged his own actions did not prejudice their decision. *Id.* ¶ 44.

In *McClaugherty*, the New Mexico Supreme Court also found a prosecutor's conduct was "willful" and barred retrial. 2008-NMSC-044, ¶ 68. In *McClaugherty*, the prosecutor's misconduct involved a single incident: the "introduction of nonexistent evidence at worst, or at best, inadmissible hearsay through . . . cross-examination questions" at a murder trial. *Id.* ¶ 60. "[T]he misconduct occurred

shortly before the end of trial, when the weakness of the [s]tate's case [would have been more] apparent." *Id.* The nonexistent evidence or inadmissible hearsay was used to impeach the defendant by claiming, in front of the jury, that the defendant had admitted to numerous witnesses that he in fact was the murderer. *Id.*

When looking at the totality of the circumstances in *McClaugherty,* the Supreme Court also noted that the prosecutor testified that he "(1) interviewed a crucial witness without her lawyer of record present; (2) did not inform the defense that he had conducted an interview with this witness; (3) never intended to call this witness at trial; and (4) introduced the content of this interview through his cross-examination questions [with the d]efendant." *Id.* ¶ 70. The Supreme Court concluded that the prosecutor's acts in the trial were executed with "'willful disregard' of the potential for a mistrial, retrial or reversal." *Id.*

In *State v. Lucero*, 1999-NMCA-102, 127 N.M. 672, 986 P.2d 468, this Court held that a prosecutor's misconduct of late disclosure of a key witness's statement did not amount to "willful disregard." Specifically, the mistrial in *Lucero* was caused by the prosecutor's disclosure of the statement on the second day of the trial, at a time in which it was unlikely the prosecutor would have believed that a mistrial was necessary to prevent acquittal. *Id.* ¶ 27. Furthermore, "[t]here was no evidence that the

prosecutor was aware of the statement prior to the time it was disclosed." *Id.* This Court also noted that while the prosecutor should have been better prepared, there was nothing to indicate that he had acted in "willful disregard." *Id.* ¶ 30.

In claiming the prosecutor's misconduct amounts to the *Breit* standard of "willful disregard," Defendant points to the State's failure to review the transcripts of the first trial in which Officer Martinez commented on Defendant's post-*Miranda* silence, the failure to properly prepare Officer Martinez for testimony, and the failure to review Officer Martinez's arrest report.

Defendant first argues the State prosecutor failed to review transcripts of the first trial, in which Officer Martinez commented on Defendant's post-*Miranda* silence. During the first trial, when cross-examined, Officer Martinez stated:

> [Defendant] at no time–of course, he did not want to speak, but at no time did he state that [the cocaine] was not his. He just got quiet. So I mean, if he would have said at that point, "That is not my stuff," then at that point, we could have further–

The prosecutor did not elicit this testimony and Defendant did not comment on or move for a mistrial based on this testimony.

Defendant also urges that the prosecution failed to prepare Officer Martinez for testimony, which led to the post-*Miranda* testimony and the mistrial. The State argues the prosecution had no opportunity to caution the witness due to the rushed

11

circumstances in which Officer Martinez was called to the stand. Specifically, the State had anticipated testimony would not start until the next day and did not have a witness in the courtroom. The district court judge directed the State to get a witness immediately. The State was able to reach Officer Martinez and put her on the stand, but in their hurry did not caution her beforehand. The State apparently did not review problems caused by her testimony with her prior to the second trial.

Because of the timing and importance of the pre-trial hearing on post-*Miranda* comments, it would have been wise for the prosecution to meet with their witness briefly to clear this issue up and ensure that no unconstitutional testimony came forth. Failing to do so, however, does not amount to the high standard of "willful disregard" as set forth in *Breit* and *McClaugherty.* Instead, the timing of the misconduct and the rushed circumstances are more like the unprepared prosecution in *Lucero.*

Finally, Defendant argues that if the State had reviewed Officer Martinez's arrest report, the State would have been made aware that Defendant did not make any post-arrest, post-*Miranda* comments. Defendant attached Officer Martinez's arrest report marked as "Exhibit A" to his brief-in-chief. Rule 12-213(F)(4) NMRA explicitly prohibits attachments to appellate briefs. Moreover, the arrest report is not otherwise in the appellate record. This Court can properly consider only those facts

which appear in the record on appeal. *In re Application of Metro. Invs., Inc.*, 110 N.M. 436, 440, 796 P.2d 1132, 1136 (Ct. App. 1990). Thus, matters which are not of record will not be considered.

Furthermore, the district court did mark the other arresting officer's arrest report as an exhibit. Officer Vocasek's arrest report, unlike Officer Martinez's arrest report, can be read in such a way as to indicate that Defendant did in fact make post-*Miranda* comments to the arresting officers:

> [Defendant] was placed under arrest, advised of his [*Miranda*] rights by Officer Martinez and placed in the backseat of Officer Sandoval's marked patrol unit. At that time I retrieved the crack cocaine from the ground. After Officer Martinez spoke to [Defendant] briefly, I asked [Defendant] what he had been doing. He began crying and stated that he had been looking for a prostitute then had picked up [a prostitute] shortly before he had been stopped by us.

While, again, it would have been wise to clear up any discrepancies in the arrest reports to be sure that Defendant did in fact make post-*Miranda* comments, the failure to do so under these circumstances does not amount to "willful disregard."

In the present case, unlike *Breit*, the prosecutor's misconduct could amount to error or negligence. The misconduct here, failing to caution a witness under rushed circumstances and the failure to review trial transcripts, is not the same unrelenting and pervasive misconduct *Breit* displays.

**III.   CONCLUSION**

Because the prosecutorial misconduct does not rise to the high level of "willful disregard" as set forth in *Breit*, we affirm the district court's decision.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**ROBERT E. ROBLES, Judge**