**Certiorari Granted, January 25, 2012, No. 33,296**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-013**

**Filing Date: October 25, 2011**

**Docket No. 29,997**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**JULIAN GUTIERREZ,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Daniel R. Lindsey, P.C.
Daniel R. Lindsey
John L. Collins
Clovis, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant Julian Gutierrez was granted a direct appeal and certification of the district court's amended decision letter denying Defendant's motion to dismiss. Defendant was indicted on three counts of criminal sexual contact of a minor, contrary to NMSA 1978,

1

Section 30-9-13(B)(2)(a) (2003). Defendant raises three issues on appeal: (1) whether the district court erred in declaring a mistrial on the basis of manifest necessity, (2) whether prosecutorial misconduct bars retrial of Defendant, and (3) whether Defendant's right to present a defense and due process rights require dismissal of all charges with prejudice. We affirm.

## I.      FACTUAL AND PROCEDURAL HISTORY

**{2}**      A grand jury indicted Defendant on three counts of criminal sexual contact of a minor.  Victim, Defendant's then sixteen-year-old daughter, testified at the grand jury hearing.  A few days before trial, on February 22, 2009, the prosecutor interviewed Victim at her school (the Interview).  The merits of Defendant's direct appeal rest on the contents of the Interview. The Interview lasted approximately one-half hour and included Victim, the prosecutor, a special investigator, and the victim's advocate.  Following the Interview, Victim fled the jurisdiction.

**{3}**      During the Interview, the prosecutor explained that the purpose of the Interview was to prepare Victim for trial, make sure she received her subpoena, and confirm she would appear.  The prosecutor asked Victim about her living arrangements.  Victim said she was living with her grandmother next door to Defendant.  Victim indicated that her grandparents had not spoken to her about testifying but that her grandmother told her she was going to get herself into a "whole bunch of trouble," and her grandfather no longer wanted her to live there.

**{4}**      The prosecutor wanted to go over the police report with Victim to make sure she still remembered the incidents.   Victim recanted, said Defendant never touched her, and explained that her mother told her to lie to the grand jury.  The prosecutor told Victim that she could be charged with perjury if she did not testify consistently with her prior statements. The prosecutor asked if she wanted to be faced with charges.  The prosecutor and the victim's advocate  also stressed that they were there to help Victim.  They explained that they were worried Victim's family was threatening her and said they could find her another place to live.  The special investigator asked Victim where her baby would go if she got into "trouble" and if she was willing to get into trouble and see her child sent to a home.  Victim then said that her father had touched her, but they were playing a game.  The special investigator told Victim she should tell the truth at trial, and if the truth was that she and Defendant were playing a game, that is what Victim should say. The prosecutor and special investigator stressed that Victim needed to tell the truth, but they made it clear that her grand jury testimony was that Defendant had touched her.  The prosecutor and the special investigator commended Victim for remaining in school while raising a child and told her she should be proud.  They also discussed driving Victim to the courthouse.

**{5}**      Victim was not present the morning of trial. During an in-chambers hearing, defense counsel filed a written motion in open court to call the prosecutor as a witness or, in the alternative, to dismiss the charges. Defense counsel argued that the prosecution improperly

threatened Victim during the Interview. The State responded that no one threatened Victim and that the State was concerned with reports that Defendant and his family, with whom Victim lived, were pressuring Victim. The State also moved for mistrial on the basis of Victim's unavailability and asked the district court to issue a bench warrant for Victim's failure to respond to her subpoena. The district court noted that with regard to intimidation, there was much "speculation as to what exactly occurred, if anything." Similarly, the court explained that Victim fled the jurisdiction and, therefore, could not discuss why she fled. Before deciding whether a mistrial or dismissal was appropriate, the district court wanted to do more research and asked both parties for additional authority. The district court temporarily dismissed the jury but kept them impaneled. The prosecutor again asked for a bench warrant for Victim's arrest due to her failure to appear pursuant to a subpoena.

{6}     Approximately two weeks later, the district court granted the State's motion for mistrial. Explaining that the present issue was only whether a mistrial was appropriate at that time, the court reserved ruling on Defendant's motion to dismiss. The court found manifest necessity due to Victim's unavailability and released the jury that had been impaneled for two weeks. To determine whether a mistrial was appropriate, the district court relied on the law and did not utilize the tape of the Interview. Defense counsel made a proffer at the mistrial hearing and asserted that the court should use the Interview to establish whether the prosecutor was coercing and threatening Victim.

{7}     The district court  held a separate hearing on Defendant's motion to dismiss for prosecutorial misconduct. The special investigator and Victim both testified about the Interview. Victim said she felt "kind of scared" because the prosecutor and the special investigator told her they could take her son away if she failed to appear for court. Victim also explained that she fled because she was afraid the prosecutor would take her son. After reviewing the actual recording of the Interview and the parties' briefs, the district court issued its amended decision letter denying Defendant's motion for dismissal. The court found no prosecutorial misconduct and again said that there was manifest necessity for a mistrial. A direct appeal was then filed by Defendant.

## II.     DISCUSSION

{8}     Defendant argues on appeal that there was no manifest necessity for mistrial, and double jeopardy bars retrial of the charges. U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant also argues that this Court should dismiss the charges with prejudice because the prosecutor's conduct had an immediate and severely prejudicial impact on his rights to present a defense and violated due process.

## A.     PROPRIETY OF THE MISTRIAL

{9}     When the district court declares a mistrial, double jeopardy precludes retrial unless the defendant consented to the mistrial, or manifest necessity compelled the mistrial. *State v. Salazar*, 1997-NMCA-088, ¶ 5, 124 N.M. 23, 946 P.2d 227. The district court ruled that

3

manifest necessity compelled a mistrial in the present case. "A motion for a mistrial is addressed to the sound discretion of the trial court and is only reviewable for an abuse of discretion." *Id.* ¶ 4 (internal quotation marks and citation omitted). "No mechanical rule exists for determining the existence of manifest necessity. The standard involves a careful weighing of [the] defendant's right to have his trial completed and the public's interest in a fair trial and just judgment." *State v. Messier*, 101 N.M. 582, 584, 686 P.2d 272, 274 (Ct. App. 1984). "An appellate court should be wary of substituting its judgment for that of the trial court." *State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993).

**{10}** The absence or unavailability of a key prosecution witness may fall within the parameters of manifest necessity. *Messier*, 101 N.M. at 585, 686 P.2d at 275. In *Messier*, this Court held that when a critical state witness is unavailable for trial, it is not an abuse of discretion for the district court to declare mistrial on the basis of manifest necessity. *Id.* at 584-85, 686 P.2d at 274-75. Mistrial, however, is not proper merely to allow the state to strengthen its case, where the state seeks a mistrial in bad faith, or where the witness is absent due to prosecutorial neglect. *Id.* at 584, 686 P.2d at 274. "Determination of the propriety of manifest necessity must be made under the particular facts of each individual case." *Id.* at 584-85, 686 P.2d at 274-75.

**{11}** Defendant attempts to distinguish *Messier* by arguing that the State acted in bad faith in seeking a mistrial, and the district court did not explore reasonable alternatives to mistrial. We disagree.

## 1.    Bad Faith

**{12}** Defendant claims the State, believing that Victim would testify inconsistently with her grand jury testimony, participated in her absence or encouraged her not to testify. As such, Defendant believes the State acted in bad faith in seeking the mistrial. A prosecutor acts in bad faith when an action is "designed to afford the prosecution a more favorable opportunity to convict." *State v. Mestas*, 93 N.M. 765, 767, 605 P.2d 1164, 1166 (Ct. App. 1980).

**{13}** Due to Victim's failure to appear at trial pursuant to a subpoena, the district court found that this key witness was unexpectedly unavailable for the purposes of manifest necessity. In considering its ruling, the district court did look at whether the State in some way encouraged Victim's unavailability. To determine the propriety of whether manifest necessity existed, we strongly defer to the district court's factual determination of the reason behind the witness's unavailability. *See Salazar*, 1997-NMCA-088, ¶ 9 (explaining that the trial court performs a fact-finding role in resolving disputes and should be given "wide latitude" in making factual determinations). Nonetheless, in instances "when the basis for the mistrial is the unavailability of key prosecution evidence . . . the strictest scrutiny is necessary." *State v. Saavedra*, 108 N.M. 38, 42, 766 P.2d 298, 302 (1988).

**{14}** We conclude that where a mistrial is granted due to witness unavailability, the

4

central question is whether the prosecutor was aware that the critical witness was unavailable before the jury was impaneled and sworn, thus acting in bad faith in seeking a mistrial. *See Arizona v. Washington*, 434 U.S. 497, 508 n.24 (1978) ("If . . . a prosecutor proceeds to trial aware that key witnesses are not available to give testimony and a mistrial is later granted for that reason, a second prosecution is barred."); *see also Downum v. United States*, 372 U.S. 734, 737 (1963) (finding no manifest necessity when prosecution's key witness failed to attend trial where district attorney impaneled a jury without serving prosecution witness with a summons and made no other arrangements to assure the witness would attend); *United States v. Gallagher*, 743 F. Supp. 745, 749 (Or. 1990) (finding manifest necessity for mistrial when an essential government witness abruptly and unexpectedly announced that he was a liar and refused to answer questions after both parties had emphasized witness's testimony in opening statements); *McCorkle v. State of Maryland*, 619 A.2d 186, 190 (Md. Ct. Spec. App. 1993) (explaining that the crucial question for manifest necessity due to witness unavailability is whether the prosecution was aware of witness unavailability at the time jeopardy attaches).

**{15}**     Focusing on the timing of the prosecutor's awareness protects against the prosecutor using the "first proceeding as a trial run of his case" and seeking a bad faith mistrial to buttress weaknesses in the state's evidence. *Arizona*, 434 U.S. at 508 n. 24. In *Downum*, the absence of the prosecution's key witness formed the basis of the mistrial declaration. 372 U.S. at 734-37. Unlike the present case, the prosecution in *Downum* knew about the key witness's absence before the first jury was impaneled and sworn. *Id.* at 735. In fact, it was this distinction on which the case turned. The Court noted that "when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance." *Id.* at 737 (internal quotation marks and citation omitted). "The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." *Id.* (internal quotation marks and citation omitted); *see also State v. Nielsen*, 761 A.2d 876, 879 (Me. 2000) (finding no manifest necessity where state chose to proceed with trial and examine numerous witnesses before making a determination that it was necessary to seek mistrial).

**{16}**     In the present appeal, the State moved for mistrial prior to the commencement of trial testimony when Victim failed to appear. Unlike *Downum*, where the prosecution made no effort to secure witness attendance, the Victim in the present case was under a subpoena. Similarly, the State had not "assumed the risk of not finding its key witness," as in *Nielsen*, because the State moved for mistrial as soon as the prosecutor realized Victim was unavailable. 761 A.2d at 879. In addition, Defendant did not produce any facts to establish that the State was aware of Victim's absence prior to jeopardy attaching. In fact, the record appears to reflect the opposite. The State expected and encouraged Victim to appear and offered to drive her to the courthouse to insure her appearance. It appears clear from the evidence that jeopardy had attached, Victim failed to appear due to a concern that she might testify inconsistently with her sworn grand jury testimony, and such inconsistent testimony could constitute perjury. If she did appear and commit perjury, such testimony could also result in a criminal charge of perjury against her.

5

**{17}** Defendant argues Victim's fear and subsequent failure to appear were the result of an improper perjury warning from the State. In many circumstances, however, a testifying witness should be warned about the possibility of a perjury charge. *See United States v. Davis*, 974 F.2d 182, 187 (D.C. Cir. 1992) ("[T]here are circumstances when warnings about the possibility and consequences of a perjury charge are warranted—even prudent"); *see also State v. Baca*, 1997-NMSC-045, ¶ 36, 124 N.M. 55, 946 P.2d 1066, (holding that a prosecutor's warning to defense witness that if she testified untruthfully she could be charged with perjury was not threatening and therefore not reversible error), *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. We cannot conclude that this warning amounted to procurement of witness unavailability such that the State acted in bad faith in seeking a mistrial. In fact, the State did everything it could to get Victim to trial, including an offer to drive her to the courthouse and asking the district court to issue a bench warrant for Victim's arrest after her failure to appear.

**{18}** Finally, the State did not take a chance but had reason to believe Victim would appear at trial and testify. Our review of the evidence confirms the district court's determination that Victim acted on her own accord when she decided not to appear at trial. Her failure to appear at trial was not encouraged or attributed to by any action of the State and, therefore, the State was not aware at the time jeopardy attached that Victim would be unavailable. The district court did not abuse its discretion in finding that the State did not act in bad faith in seeking a mistrial based on Victim's unavailability.

**2.      Reasonable Alternatives**

**{19}** Having found that the State did not act in bad faith, we must look at whether the district court explored alternatives to a mistrial. "Before a mistrial is granted, other reasonable alternatives must be considered." *Messier*, 101 N.M. at 585, 686 P.2d at 275. While a court must examine other reasonable alternatives to mistrial, explicit findings on those options are not required. *Id.*

**{20}** Defendant argues that the district court did not appropriately explore alternatives to mistrial. We disagree. To support his argument, Defendant cites *State v. Yazzie*, 2010-NMCA-028, 147 N.M. 768, 228 P.3d 1188. In *Yazzie*, this Court held there was no manifest necessity when defense counsel inquired about the defendant's prior bad acts and plea bargain during cross-examination of the victim. *Id*. ¶ 14. The district court declared a mistrial before the victim answered the questions. *Id.* Manifest necessity was improper because the district court failed to explore reasonable alternatives, such as curative instructions. *Id.* ¶ 19.

**{21}** Defendant's authority is not persuasive. In *Yazzie* and the other authorities cited by Defendant, trial testimony had already commenced and thus, reasonable alternatives were more readily available. *See Taylor v. State*, 811 So. 2d 803, 804-05 (Fla. Dist. Ct. App. 2002) (per curiam) (reasoning that the district court failed to explore reasonable alternatives

to mistrial, such as severance, where trial had commenced and the court granted co-defendant's motion for mistrial despite the defendant's objection and willingness to continue with trial); *see also Thomason v. State*, 620 So. 2d 1234, 1239 (Fla. 1993) (explaining that there is no manifest necessity when, three days into trial, defense attorney suddenly became ill and the trial court actively refused to consider reasonable alternatives, such as a two week continuance or contacting defense attorney's doctor); *Nielsen*, 761 A.2d at 879 (finding no manifest necessity where the state chose to proceed with trial when a key witness was unavailable, but explaining that there would have been reasonable alternatives to mistrial had the State moved for continuance or dismissal without prejudice prior to trial).

**{22}** The present facts are closer to this Court's decision in *Messier.* In *Messier*, the audio portion of a previously recorded videotape examination of the key child witness for the state was defective. 101 N.M. at 583, 686 P.2d at 273. Due to an existing illness and a prior ruling that in-person testimony would cause the child harm, the witness was considered unavailable. *Id.* at 584, 686 P.2d at 274. Rather than immediately granting mistrial, the trial court continued the trial until the following day. *Id.* at 585, 686 P.2d at 275. At that time, the trial court concluded that "reexamining whether the witness could be called in person was the only reasonable alternative." *Id.* at 586, 686 P.2d at 276. After holding a second hearing and again finding the child witness could not be called to testify in person, the trial court declared a mistrial based on manifest necessity. Under those facts, this Court determined the district court did not abuse its discretion. *Id.*

**{23}** Additionally, unlike *Yazzie*, where the error was evidentiary and could be addressed by a curative instruction, such options were not readily apparent or available in the present case. Recognizing this dilemma, the district court refused to immediately grant a mistrial. Instead, the district court kept the jury impaneled and considered the feasibility of a continuance for two weeks so that Victim might be made available to testify. The district court granted a mistrial only after evidence was presented to show that Victim left the jurisdiction on her own accord, her location was unknown, and the timing of her return could not be determined. Accordingly, we hold that the district court adequately considered other factors short of mistrial and reasonably delayed its ruling until other reasonable alternatives had been considered and eliminated. We affirm the district court's finding of manifest necessity for a mistrial.

## B.   DOUBLE JEOPARDY BASED ON PROSECUTORIAL MISCONDUCT

**{24}** Defendant asserts that double jeopardy bars his retrial due to prosecutorial misconduct. This Court reviews a claim of double jeopardy de novo, examining the prosecutor's conduct in light of the totality of the circumstances and giving deference to the district court's factual findings when they are supported by substantial evidence. *State v. Breit*, 1996-NMSC-067, ¶ 40, 122 N.M. 655, 930 P.2d 792; *State v. Gonzales*, 2002-NMCA-071, ¶ 10, 132 N.M. 420, 49 P.3d 681.

**{25}** Retrial may be barred under Article II, Section 15 of the New Mexico Constitution

when (1) improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial, (2) the official knows that the conduct is improper and prejudicial, and (3) the official intends to provoke a mistrial or acts in willful disregard of the resulting mistrial. *Breit*, 1996-NMSC-067, ¶ 32. The test to find prosecutorial misconduct is objective, focusing on the effect of the prosecutor's conduct on the trial rather than the prosecutor's belief regarding his or her conduct. *State v. McClaugherty*, 2008-NMSC-044, ¶¶ 26-27, 144 N.M. 483, 188 P.3d 1234. We now apply the three factors set forth in *Breit* to the particular facts and circumstances in this case.

**1.      Unfair Prejudice**

**{26}**    First, we address whether the prosecutor's conduct was so unfairly prejudicial to Defendant that it could not be cured by means short of a mistrial or motion for new trial. *See Breit*, 1996-NMSC-067, ¶ 32. We cannot say that the prosecutor's statements during the Interview were so unfairly prejudicial that it caused Victim's unavailability at trial and could be cured by means short of a mistrial.

**{27}**    Victim chose to hide and make herself unavailable to testify because she told the prosecutor during the Interview that her testimony might be inconsistent with her previous grand jury testimony. The prosecutor explained to Victim that it would be considered perjury to testify inconsistently with prior sworn testimony and encouraged Victim to tell the truth during trial. The State was also concerned that Victim's change in testimony was due to pressure from Defendant and his family. The State did not encourage Victim to testify falsely and also explained that an act of perjury would carry potential criminal consequences. Finally, the State's special investigator asked Victim to consider and understand one of the specific personal consequences that might result if she committed perjury and was actually charged with perjury due to her sworn testimony. Although these statements clearly scared Victim, they were legally accurate and did not misrepresent the potential implications of committing perjury while testifying under oath. As such, they cannot be deemed prosecutorial misconduct or unfairly prejudicial to Defendant.

**{28}**    Similarly, Defendant fails to show how he was prejudiced by the State's conduct. Defendant claims Victim's testimony will exculpate him and argues that the State "intimidate[d], harrass[ed] and frighten[ed] a potentially exculpatory witness into either silence or collusion." First, we are not convinced that Victim's testimony will be exculpatory. Here, Victim is not a defense witness. She is under subpoena from the State, and the State is expecting her to testify truthfully. Although Victim originally failed to appear for trial, she later obtained an attorney, and through that attorney indicated that she will now appear in court to testify. Despite Victim's present availability to testify, Defendant speculates that she will not testify truthfully, and he will be falsely implicated because of Victim's concerns about committing perjury. We will not speculate about Victim's testimony at trial, whether it will prejudice Defendant, or any of the legal consequences that might result if Victim testifies falsely and commits perjury. Therefore, Defendant is unable to establish prejudice at this time, and we hold that the first prong of the

8

*Breit* test has not been satisfied. Although failing to satisfy the first prong disposes of Defendants' double jeopardy arguments, we shall also proceed to address the other two prongs.

## 2. Improper and Prejudicial Conduct

{29} The second prong of the *Breit* test requires us to consider whether the prosecutor knew or should have known that the conduct was improper and prejudicial. *State v. Lucero*, 1999-NMCA-102, ¶ 24, 127 N.M. 672, 986 P.2d 468. We presume that a prosecutor is aware of the rules of professional conduct and the illegality of threatening witnesses. While Defendant correctly notes that the prosecution cannot "intimidate, harass and frighten" a witness not to testify, it is proper for the prosecutor and the court to "advise a witness that testimony which differs from prior sworn testimony may give rise to perjury charges." *Baca*, 1997-NMSC-045, ¶ 35. Here, the statements made by the prosecutor and the special investigator were intended to specifically alert Victim to some of the severe consequences that may result from committing perjury. It is not illegal or unethical to make a witness aware of these consequences. *See State v. Stanley*, 720 A.2d 323, 330 (Md. 1988) ("Generally, a party may warn its witness of the ramifications of perjury.").

{30} The prosecutor's statements during the Interview fail to reach the standard of egregiousness required to establish prosecutorial misconduct. *See Gonzales*, 2002-NMCA-071, ¶ 14 (holding that dismissal of criminal charges for prosecutorial misconduct should only be used for "the most severe prosecutorial transgressions"). The prosecutor and the special investigator consistently told Victim that the purpose of the Interview was to prepare her for trial and that her duty at trial was to tell the truth. The meeting lasted thirty minutes, and the tone of the Interview remained cordial at all times. When Victim said that Defendant never touched her, the prosecutor warned her of the possibility that false testimony might cause her to face charges for perjury. The special investigator then brought up the additional possibility that Victim might lose her child if she were to be charged with perjury. The tone of this portion of the conversation, paired with the prosecution's concern that Victim's family was pressuring her to recant, indicate that the discussion was meant to warn Victim of the seriousness and potential consequences of lying under oath.

{31} Additionally, Victim, herself, testified that she felt "kind of scared" because the prosecutor and the special investigator told her they could take her son away if she failed to appear. Although statements regarding the consequences that could affect Victim's child might be considered scary to a young witness, the prosecutor could not have known or expected that Victim would flee as a result of the Interview. Instead, it is more reasonable for the prosecutor to believe that Victim would testify truthfully and be ready to explain any prior inconsistent statements that she had made before the grand jury. Similarly, although not independently significant, we note again that Victim was a State witness, not a witness for the defense. Thus the State was advising Victim to testify truthfully, not attempting to silence her. Taken in context, the district court could reasonably determine that the prosecutor's statements during the Interview do not rise to the level of a threat or that the

State's conduct was improper and prejudicial. As a result, the second prong of the *Breit* test was not satisfied.

### 3.     Willful Disregard

**{32}** Finally, Defendant argues that the State "acted in a way that demonstrated willful disregard of a potential discharge of proceedings." "Willful disregard" means "a conscious and purposeful decision . . . to dismiss any concern that . . . conduct may lead to a mistrial." *Breit*, 1996-NMSC-067, ¶ 34.

**{33}** In support of his argument, Defendant asserts that the State was attempting to obtain a conviction "at all costs." Defendant also claims that Victim was never unavailable and the "prosecution knew exactly where [Victim] was on the morning of trial." To the extent Defendant speculates about some grandiose plan by the State for Victim not to show up to trial, the evidence presented before the district court did not support such a plan. Defendant fails to cite to any facts in the record or other authority in support of this contention, and we decline to review Defendant's undeveloped argument on appeal. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (noting that it is the party's responsibility to connect legal theories to the pertinent elements and the factual support for those elements and that this Court may decline to review undeveloped arguments on appeal).

**{34}** After thorough review of the record, we agree with the district court that the actions by the State did not constitute prosecutorial misconduct.

### C.     DISMISSAL OF CHARGES WITH PREJUDICE

**{35}** Defendant argues that this Court should dismiss the charges against him with prejudice because the prosecutor's actions had an immediate and severely prejudicial effect on his right to present a defense and his due process right to compulsory process. Defendant, however, does not indicate whether he preserved this argument or whether preservation was necessary. Additionally, Defendant fails to cite to the record to support his claims. We also note that Defendant's argument was premature and speculative. As such, we will not consider his argument on appeal. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (explaining that this Court has no duty to review arguments that are not adequately developed), *cert. denied*, 2010-NMCERT-012, 150 N.M. 492, 263 P.3d 269 (No. 32,684, Dec. 16, 2010); *see also State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues unsupported by argument and authority).

### III.     CONCLUSION

**{36}** We hold that there was manifest necessity for a mistrial and that the State did not commit prosecutorial misconduct during the Interview conducted with Victim prior to trial. As a result, we conclude that double jeopardy does not bar retrial of  Defendant, and we

remand this matter to the district court for a new trial.

**{37}  IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**

Topic Index for *State v. Gutierrez*, **No. 29,997**

| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| CT-DP | Due Process |
| CT-MS | Misconduct by Prosecutor |

| **CL** | **CRIMINAL LAW** |
| CL-PJ | Perjury |
| CL-SE | Sexual Exploitation of Children |
| CL-WI | Witness Intimidation |

| **CA** | **CRIMINAL PROCEDURE** |
| CA-CW | Children as Witnesses |
| CA-MT | Mistrial |
| CA-WT | Witnesses |

| **EV** | **EVIDENCE** |
| EV-AV | Availability of Witness |
| EV-PA | Prior Acts or Statements |